# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STELLA J. TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-281-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Stella J. Tucker requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy. . . ." *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires claimant to establish she has a medically severe impairment (or a combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner can shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 30, 1947, and was fifty-eight (58) years old at the time of the administrative hearing. She has a high school education and has worked as a secretary, explosives worker, and cashier/checker. She alleges she has been unable to work since May 9, 2001, because of heart problems, high blood pressure, and thyroid problems.

### Procedural History

On February 9, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ Lantz McClain conducted a hearing and found that the claimant was not disabled on March 23, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant's cardiomyopathy, status post mitral valve replacement, hypertension, obesity and hyperlipidemia were, in combination, severe physical impairments (Tr. 17). The ALJ then determined that the claimant had the residual functional capacity ("RFC") to perform a wide range of sedentary work, *i. e.*, that she could lift or carry up to five pounds frequently and up to ten pounds occasionally, and stand and/or walk for two hours of an eight hour work

day and sit for six hours of an eight hour work day, both with normal breaks (Tr. 19). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a secretary (Tr. 25).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence; (ii) by failing to properly develop the record with regard to the demands of the claimant's prior work and thus improperly finding she had the RFC to perform it; and (iii) by failing to properly evaluate the claimant's credibility. The Court finds these arguments persuasive.

Dr. David Trent was the claimant's treating family physician from mid-2004 through mid-2005 (Tr. 313-19, 490-91, 493-95). He opined in a medical source statement that the claimant's RFC was limited to the following: occasionally lifting and carrying less than ten pounds, with "no exertion at all"; standing or walking a total of less than one hour of an eight hour work day, with "no continuous ambulation at all"; sitting for a total of four hours of an eight hour work day, limited by breaks at least every hour with "absolutely no stress"; no lying down during the work day because if she must do so to relieve pain, "she should not be at work"; frequently feeling; occasionally fingering; and never climbing, balancing, stooping, kneeling, crouching, crawling, reaching or handling. He also imposed environmental restrictions due to the claimant's high blood pressure and heart condition (Tr. 490-91). Dr. Trent's opinion as to the claimant's physical limitations was thus substantially at odds with the RFC adopted by the ALJ.

An ALJ must give controlling weight to the medical opinion of a treating physician if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. Even if such an opinion is not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give it by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). "Finally, if the ALJ rejects the opinion completely, he must then give *specific, legitimate reasons* for doing so." *Id.* at 1301 [emphasis added; quotations omitted], *citing Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996) ("To reject a treating physician's opinion requires 'specific, legitimate reasons,'

that were not provided in this case."), *quoting Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987). *See also Drapeau,* 255 F.3d at 1213 ("When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth 'specific, legitimate reasons' for his decision.") [citations omitted]. The ALJ's resolution of these issues "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins,* 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

The ALJ's treatment of Dr. Trent's medical opinions clearly fell below these standards. He determined the opinions were entitled to "less than controlling weight" because: (i) Dr. Trent was the claimant's family physician, not her cardiologist; (ii) Dr. Trent had not referred to the cardiologist's reports or otherwise stated the basis for his conclusions regarding the claimant's limitations; and, (iii) Dr. Trent's opinions seemed to be based solely on the claimant's subjective complaints, which the ALJ found were not credible (Tr. 22).[2] Assuming *arguendo* this analysis justified giving "less than controlling weight" to Dr. Trent's opinions, the ALJ was nevertheless required to explain *exactly* what weight he gave those opinions based on all the factors identified above. Instead, the ALJ apparently rejected

---

[2] If the ALJ had any questions about the source of (or the basis for) any of Dr. Trent's opinions, he should have recontacted Dr. Trent for an explanation before rejecting them outright. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, the effect of those limitations on her ability to work, . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See generally* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Dr. Trent's opinions outright in favor of the physical RFC assessment of the agency's consultative examiner, Dr. Deepak Jaiswal (Tr. 20), without mentioning this was what he was doing, *see, e. g., Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], or explaining why he found such opinion superior to those provided by the claimant's treating physician. *See Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir.2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); *and* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. This was particularly problematic here because the vocational expert who testified at the hearing indicated that the functional limitations imposed by Dr. Trent would preclude all of the claimant's past relevant work (Tr. 525).

      The ALJ also found that the claimant was not fully credible, *i. e.*, that her "allegations of adverse symptomology are just not believable to the extent alleged and are not supported by the objective medical evidence of record" and that her statements regarding "her impairments and their impact on her ability to work are not entirely credible in light of the medical record as a whole, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the marked discrepancies between her allegations and the . . . documentary reports" (Tr. 24). An ALJ's credibility determination is entitled to deference unless there is an indication that the ALJ misread the

medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

Once again, the analysis provided by the ALJ clearly fell below the applicable standards. While he found "discrepancies between her allegations and the information contained in the documentary reports" (Tr. 25), he failed to state what evidence he found to be contrary to the claimant's allegations. *See, e. g., Kepler,* 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."). Absent specific references to the record, the ALJ's credibility determination was basically boilerplate. *See Hardman*, 362 F.3d 679 ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *quoting Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

The Commissioner offers creditable arguments supporting the ALJ's treatment of Dr. Trent's opinions and the claimant's allegation of disabling pain. But this Court sits in review and is therefore "not in a position to draw factual conclusions on behalf of the ALJ."

*Drapeau*, 255 F.3d at 1214, *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). The decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis affects the claimant's RFC, the ALJ should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**